CARLSON MOTOR & TRUCK CO. v. MAXWELL–BRISCOE MOTOR CO.

(Circuit Court, S. D. New York. April 5, 1910.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—INTERNAL-COMBUSTION ENGINES.

> The Carlson patent, No. 797,555, for improvements in internal-combustion engines, claim 1, which covers a new combination of parts, in which the valve-operating mechanism is mounted in a removable cover-plate for the casing and is removable therewith to facilitate access to the inside working mechanism, was not anticipated, discloses patentable invention, and is entitled to a fairly liberal construction; also *held* infringed.

In Equity. Suit by the Carlson Motor & Truck Company against the Maxwell-Briscoe Motor Company. On final hearing. Decree for complainant.

James C. Chapin and D. Howard Haywood, for complainant.
Ward, Hayden & Satterlee, R. A. Parker, and Alexander C. Proudfit, for defendant.

HAZEL, District Judge. In this case infringement is charged of claim 1 of letters patent No. 797,555, granted August 22, 1905, to Charles A. Carlson, who assigned to the complainant. The invention relates to improvements in internal-combustion engines. The involved claim reads:

> "1. In an internal-combustion engine, the combination with a hollow casing, opposed cylinders secured thereto, and inlet and exhaust valves mounted in a part stationary with said cylinders, of a removable cover-plate for said casing, a cam-shaft mounted in said cover-plate, and cam-followers also mounted in said cover-plate and removable therewith, said cam-followers arranged to engage and operate said valves."

Said claim is for a combination of the following elements: (1) A hollow casing; (2) opposed cylinders secured thereto; (3) inlet and exhaust valves mounted in a part stationary with the cylinders; (4) a removable cover-plate for the casing; (5) a cam-shaft mounted in the cover-plate; (6) cam-followers mounted in the cover-plate and remov-

able therewith, the cam-followers arranged to engage and operate the valves. The object of the invention was to enable ready access to the inside working mechanism of the engine for the purpose of adjustment or to make repairs. To attain this end the inventor conceived the idea of assembling the valve-operating appliances in a separable frame and joining them thereto, and he arranged the bearings for the camshaft and the connecting rods within the interior of the hollow casing upon which the frame or cover-plate rests. The specification says:

> "To obtain access to the interior of the casing, the entire cover-plate, 21, together with the cam-shaft and cams, cam-followers and slides, and all parts carried thereby, may be removed by merely removing the six bolts which hold the said cover-plate in place. The slides being arranged only in abutting relation with the valves, there will be no connections or disconnections to be made at this point, and all parts, being carried by and self-contained within the cover-plate, said plate may be as easily replaced. To obtain access to the cam-shaft, cams, and cam-followers, it is only necessary to remove the auxiliary cam-plate, 36, and then, to obtain access to any one or pair of the slides, 31, it is only necessary, in addition to removing the said auxiliary cover, 36, to remove the individual cover-plate, 32, covering the slide or slides to which access is desired."

The principal defenses are anticipation, limitation of the claim, and noninfringement. In the patent to Duryea (No. 605,815, dated June 14, 1898), which concededly is the nearest approach to the Carlson improvement in suit, the inventor sought to point out a way to secure quick access to certain parts of the engine compacted and arranged within limited space underneath the valve mechanism. In such patent is shown, it is true, a separable crank casing; but the crank shaft and bearings for the shaft are contained in both of its parts. The crank portion of the shaft has connected to it the piston connecting rods, while at the upper end of the casing is inclosed the valve-operating parts. Such arrangement makes it difficult to reach into the interior of the casing to adjust the connecting rod bearings without first taking out the bolts or screws which hold the separable parts of the casing together and also removing other parts of the mechanism. It was just such impediments to accessibility that the patent in suit designs to minimize or remove. Although removable cover-plates in internal-combustion engines and the separate elements of claim 1 were old, it is, nevertheless, thought to have been new to combine or assemble them together in a rectangular frame or cover for joint removal, so that ready adjustment of the connecting-rod bearing could be made while the crank-shaft bearing remained in proper position. Viewed in this light, the Duryea patent is not anticipatory. In the patent in suit is disclosed a new combination of old elements which produces a new and useful result, and, as such result had not previously been achieved, the patentee is entitled to a fair modicum of protection.

The defendant contends that the patentee simply separated or divided the Duryea casing to produce the removable frame or cover-plate in suit with the valve mechanism attached to it, and to do this did not involve inventive skill. To this view I cannot accede. The principle underlying cases where the prior device was made of one piece, instead of two, is not thought to apply. To lift out the valve-operating mechanism in prior casings required the removal of a considerable

number of bolts and screws, and, after adjusting the parts, putting them back into firm position, which was usually an irksome and lengthy undertaking. To assemble and arrange the parts in separate casings or frames, to align or arrange the valve mechanism in connection with the crank shaft and bearings, so that the parts in the different frames would operate, not only independently, but in connection with other parts of the engine, was not an obvious thing for an ordinarily skilled mechanic to do, even with the Duryea structure before him.

I have also examined the exhibit Duryea 1901 car and the several other patents and devices for removable cover-plates; but in none of them do I find the arrangement of the parts in combination with the cover-plate to supply the desired accessibility of the interior of the casing, so that ready adjustment of the parts may be made. In such of the prior structures as I have deemed necessary to examine, the removal of the valve-operating parts involve the separation of the casing, which obviously interfered with making the adjustments quickly, and also with properly aligning or readjusting the connecting rods in relation to the crank-shaft bearing.

The defendant further contends that the drawings attached to the specification show a cover extending two-thirds of the area of the open outer side of the casing, while the remaining space is taken up by the cam-shaft, cams, and cam-follower, and hence that the claim must be strictly limited to such a structure. But such a narrow construction of the claim is not demanded. It appears clearly from the specification and claims that what the patentee intended to accomplish was the removal of the valve mechanism assembled in the cover-plate, permitting its replacement without first readjusting it. No other construction of the claim will save to the inventor the value of his improvement, and while invention, in view of the Duryea structure, is perhaps not entirely free from doubt, yet patentability finds persuasive support in the attitude of the defendant in the Patent Office in claiming that its structure disclosed invention and declaring interference with the patent in suit.

The defendant's cover-plate and valve mechanism.is not a sufficient departure from that in suit to save it from the claim of infringement, and therefore a decree for an injunction and accounting, with costs, may be entered.